UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | Case No. 3:18-CR-084 JD |
| | ) | |
| ERIC FORD (02) | ) | |

## **OPINION AND ORDER**

Defendant Eric Ford previously moved to suppress a short-barreled shotgun found during a search of his home, arguing that the firearm fell outside the scope of a search warrant for illegal drugs. The parties agreed to resolve the motion on stipulated facts, one of which was that the firearm was found sitting on top of a dresser or cabinet. The Court denied the motion, finding in relevant part that even if the firearm was outside the scope of the warrant, its seizure was lawful under the plain view doctrine, as a short-barreled shotgun is contraband whose incriminating nature was immediately apparent to the officers executing the warrant. The Court also held in the alternative that the officers were entitled to seize the firearm for officer safety, and that the firearm fell within the scope of the warrant as evidence of tools of the drug trade.

Mr. Ford now moves to reconsider that holding, arguing that his own stipulated fact was erroneous. After looking again at pictures that were previously available, he and the government now agree that the firearm was not found sitting on top of a dresser, but was moved from its original location and placed upon the dresser by an officer who was conducting the search. [DE 93 ¶¶ 3, 6]. He argues that the firearm thus was not found "in plain view," so it should be suppressed.

That argument misunderstands the plain view doctrine. When officers' presence is lawful but they do not otherwise have authority to conduct a search, the plain view doctrine allows them to seize an item if its incriminating nature is immediately apparent. But if the officer in that

situation needs to manipulate the item to detect its incriminating nature, that would constitute a search outside the plain view doctrine. *See Arizona v. Hicks*, 480 U.S. 321, 325 (1987) (noting that "the distinction between 'looking' at a suspicious object in plain view and 'moving' it even a few inches is much more than trivial for purposes of the Fourth Amendment" (internal quotation omitted)); *United States v. Brown*, 79 F.3d 1499, 1508 (7th Cir. 1996) ("If the officer, unsure of what the object is, needs to uncover what he cannot already see to verify that it is probative of criminal activity, that verification process entails a search [outside the scope of the plain view doctrine].").

That particular application of the plain view doctrine does not apply here, though, as the officers were executing a search warrant. The warrant did not merely allow officers to enter the premises and walk around without touching anything—it authorized them to *search* the premises. Any items they discovered in carrying out that search are subject to the plain view doctrine. *Horton v. California*, 496 U.S. 128, 135 (1990) ("An example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character."); *Russell v. Harms*, 397 F.3d 458, 465 (7th Cir. 2005); *United States v. Klebig*, 228 F. App'x 613, 619 (7th Cir. 2007). Given the size of the items subject to the warrant at issue here, including "drugs" and "drug paraphernalia," there is nowhere the firearm could have been found that the officers were not authorized to search. Anywhere the firearm could have been found, so too could drugs have been found; drugs could have even been found inside the firearm. Thus, it makes no difference whether officers initially found the firearm sitting on top of the dresser, hidden inside the dresser, or anywhere else in the premises. Officers were authorized by the

warrant to conduct a search, and firearm's incriminating nature was immediately apparent once it was found, so the officers were entitled to seize the firearm under the plain view doctrine.

For that same reason, the Court need not hold a hearing to determine where exactly the firearm was found, as the defendant suggests in his reply brief, as there is no place it could have been found where its seizure would have been unlawful. Indeed, the Court noted in denying the motion to suppress that it did not ultimately matter whether the firearm was found on top of the dresser. [DE 88 p. 11 n.6 ("Even if Scott or the other officers had inadvertently stumbled upon the shotgun as a result of their search efforts (such as by finding it in a drawer, for example, as opposed to observing it in the open), subsequent handling and inspection of the firearm would still have been permitted within the boundaries of the search warrant . . . . At that point, the short length of the barrel would have rendered its incriminating nature obvious and its seizure practically unavoidable and justified under the plain view doctrine . . . .")]. Nothing in the motion for reconsideration calls into question or even addresses that analysis.

Finally, the motion for reconsideration entirely fails to address the alternative grounds upon which the Court denied the motion to suppress—that officers were entitled to seize the firearm for officer safety, and that the firearm fell within the scope of the warrant as "other items related to drugs." Thus, the outcome of the motion to suppress would not change even if the Court accepted the arguments in the motion for reconsideration.

For those reasons, the Court DENIES the defendant's motion to reconsider. [DE 93].

SO ORDERED.

ENTERED: September 10, 2019

                                                /s/ JON E. DEGUILIO
                                                Judge
                                                United States District Court